655 So.2d 82 (1995)
STATE of Florida, Petitioner,
v.
Keith Bernard BROWN, Respondent.
No. 83759.
Supreme Court of Florida.
May 4, 1995.
*83 Robert A. Butterworth, Atty. Gen., James W. Rogers, Sr. Asst. Atty. Gen., and Stephen R. White, Asst. Atty. Gen., Tallahassee, for petitioner.
Keith Bernard Brown, Sanderson, pro se.
Nancy A. Daniels, Public Defender, and Paula S. Saunders, Asst. Public Defender, Tallahassee, for respondent.
PER CURIAM.
We review Brown v. State, 634 So.2d 735 (Fla. 1st DCA 1994), in which the court certified the following question as one of great public importance:
IN VIEW OF SMITH v. STATE, 598 So.2d 1063 (Fla. 1992), DOES THE DECISION IN REE v. STATE, 565 So.2d 1329 (Fla. 1990), REQUIRE REVERSAL AND REMAND FOR IMPOSITION OF A GUIDELINES SENTENCE IN A CASE THAT WAS PENDING ON DIRECT APPEAL WHEN REE WAS DECIDED, WAS FINALLY DISPOSED OF IN ACCORDANCE WITH REE, AND IN WHICH THE ISSUE WAS RAISED AGAIN BY MOTION FOR POST-CONVICTION RELIEF AFTER ISSUANCE OF SMITH?
Id. at 737. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
On August 18, 1989, Keith Bernard Brown was convicted of second-degree murder and armed robbery and sentenced to life in prison, although sentencing guidelines had recommended a sentence of twenty-two to twenty-seven years. Written reasons for the upwards departure from the sentencing guidelines were signed by the trial judge on August 23, 1989 and filed the following day.
On direct appeal, Brown argued that the trial court's failure to provide contemporaneous written reasons for the departure sentence was error and entitled him to a new sentencing within the guidelines. Brown v. State, 565 So.2d 369, 370 (Fla. 1st DCA 1990). During the pendency of that appeal, this Court decided Ree v. State, 565 So.2d 1329 (Fla. 1990). In Ree, we held that written reasons for a departure sentence must be issued at the time of sentencing. Id. at 1331. However, we also held in Ree that the contemporaneity requirement "shall only be applied prospectively." Id. On the authority of Ree, the district court of appeal in Brown's direct appeal found that the trial court did not commit error in the sentencing procedure utilized at the time Brown was sentenced. 565 So.2d 369, 370. This Court denied review of Brown's direct appeal in Brown v. State, 576 So.2d 285 (Fla. 1991).
On April 2, 1992, we decided Smith v. State, 598 So.2d 1063 (Fla. 1992). Smith receded from Ree and held that Ree "shall apply to all cases not yet final when mandate issued after rehearing in Ree." 598 So.2d 1063, 1066. Smith also established a blanket rule of retrospective application to all nonfinal cases for new rules of law announced by this Court. Id.
Brown then filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. One of the grounds for relief argued in the motion was the noncontemporaneous issuance of written findings for Brown's departure sentence. Relying on the authority of Smith, since his case was not final at the time of issuance of mandate after rehearing in Ree, Brown claimed he was entitled to a new sentencing determination within the guidelines. See Pope v. State, 561 So.2d 554, 556 (Fla. 1990) ("[W]hen an appellate court reverses a departure sentence because there were no written reasons, the court must remand for resentencing with no possibility of departure from the guidelines."). The circuit court, however, denied Brown's motion, stating that
[Brown's] argument is unavailing as it is inconsistent with the supreme court's overall holding in Smith that changes in the law should be applied retrospectively only in cases pending on direct review or not yet final. In fact, there in [sic] language in the decision to the effect that this court should not retrospectively apply Ree in [Brown's case] since judgment and sentence *84 have become final and [Brown] collaterally raises the instant claim in a motion for post-conviction relief.
Subsequently, Brown appealed to the First District Court of Appeal, raising only the contemporaneous writing requirement issue. The district court of appeal found Smith applicable to Brown's circumstances and reversed and remanded for resentencing within the guidelines. However, because of confusion over the application of Smith to collateral cases involving the contemporaneous writing requirement, the court certified the question quoted above.
In Smith, we held "that any decision of this Court announcing a new rule of law, or merely applying an established rule of law to a new or different factual situation must be given retrospective application by the courts of this state in every case pending on direct review or not yet final." 598 So.2d at 1066. Because Ree conflicted with this new rule since it had applied its new rule "prospectively only," Smith receded from Ree and made the contemporaneous writing requirement applicable to all nonfinal cases when mandate issued after rehearing in Ree. Id. A footnote in Smith explained the effect of this blanket rule of retrospectivity to cases on collateral review: "Although we have occasionally applied precedent retrospectively on collateral review, we have in numerous instances distinguished collateral cases from `pipeline' cases, i.e., those not yet final at the time the law changed, applying the change in law retrospectively only to the pipeline cases." Id. at 1066 n. 5.
The issue presented in this case is whether Smith's recedence from the original holding of Ree should be given retrospective effect to all nonfinal decisions at the time of the issuance of mandate after rehearing in Ree or only to those cases remaining in the "pipeline" at the time of the decision in Smith.
We conclude that it would be unfair not to extend the rule announced in Smith to Brown in light of the ability of other defendants, who were in the direct appeal "pipeline" at the same time as Ree, to take advantage of the retrospective application of the contemporaneous writing requirement because their cases were still not yet final at the time of the decision in Smith. Brown raised the issue in his appeal, and it was not his fault that his case became final before we receded from our declaration of prospectivity in Ree.
We answer the certified question in the affirmative, approve the decision of the district court of appeal, and remand for imposition of a guidelines sentence.
It is so ordered.
OVERTON, SHAW and KOGAN, JJ., concur.
HARDING, J., concurring with an opinion, in which SHAW, J., concurs.
ANSTEAD, J., concurring with an opinion, in which SHAW and KOGAN, JJ., concur.
GRIMES, C.J., dissents with an opinion, in which WELLS, J., concurs.
HARDING, Justice, concurring.
I concur with the majority and write to emphasize that the Smith rule applies to Brown because, in the exuberance of the majority in Smith, the opinion clearly states, "[W]e now hold that Ree shall apply to all cases not yet final when mandate issued after rehearing in Ree." Smith v. State, 598 So.2d 1063, 1066 (Fla. 1992). Those words would be meaningless if we denied Brown relief. Brown's case was not final when Ree was decided, and the fact that this matter comes to us by collateral means is inconsequential. How else would Brown get the relief extended in Smith if his case became final after Ree and before Smith, as it in fact did? I believe in the doctrine of finality suggested by the dissent of Chief Justice Grimes in this case. However, we should have been concerned about its application in Smith, not now. In Smith we clearly extended finality when we reached back to those cases not yet final when Ree became final. In my judgment, granting Brown relief is not merely a question of fairness as suggested by the majority opinion. It is a question of the proper application of a clear holding of this Court.
SHAW, J., concurs.
*85 ANSTEAD, Justice, concurring.
Once in a while the courts, like other institutions composed of human beings, make mistakes. Further, because judicial procedures are not always easily understood by all, and the system uses a technical vocabulary, our mistakes are sometimes compounded when we try to correct and explain them. As a result, we certainly get our share of criticism, some good-natured and some more pointed. Our treatment of the issue involved herein is a good example.
Mr. Ree claimed that a trial court could not legally impose a sentence that departed from the sentencing guidelines without issuing written reasons justifying departure at the same time. Mr. Ree stuck by his position, and was eventually successful in having this Court agree. We set aside Mr. Ree's departure sentence. Mr. Brown came along after Mr. Ree and made the same claim that Mr. Ree made, carefully preserving his claim at each stage of the legal proceedings. In fact, even before Mr. Brown's case moved within the appellate pipeline to this Court, Mr. Ree essentially "won" Mr. Brown's case for him by getting this Court to agree with the position advocated by Brown. You would think that Brown, following Mr. Ree, would not even have to advance his case to this Court, since the issue was resolved with the answer Brown had advocated all along.
While Mr. Brown was celebrating Mr. Ree's victory, however, this Court was trying to figure out whether the Ree holding had been the law all along, or whether it was some new law that should only be applied "prospectively," a word of legal art that may have more than one meaning, and sometimes requires explanation. But would not one thing at least be certain, that Mr. Brown, having preserved the same issue and waiting in the wings after Mr. Ree, should at least be treated like Mr. Ree? After all, if Mr. Ree had dropped the ball and somehow failed to get the issue to this Court, would not Mr. Brown have been right here asking for the same ruling, having "properly preserved the issue" just like Ree? However, notwithstanding Mr. Ree's success, both the district court and this Court denied Brown's appeals.
In the meantime, in a series of unclear rulings, initially and in opinions on rehearing, the air was "finally cleared" when we held in Smith that Ree "shall apply to all cases not yet final when mandate issued after rehearing in Ree." We are now holding, in essence, that Brown was right all along, since he, like Ree, did everything he could to preserve the issue, and his appeal was still pending when the mandate issued in Ree. In this case at least, justice delayed may not be justice denied.
SHAW and KOGAN, JJ., concur.
GRIMES, Chief Justice, dissenting.
In Smith v. State, 598 So.2d 1063 (Fla. 1992), we expressly declined to extend retroactivity of new rules of law to cases already final, distinguishing between collateral and "pipeline" cases. In this instance, Brown's direct appeal had been final for more than a year prior to our decision in Smith, i.e., he was no longer in the "pipeline." Therefore, Brown should not receive the benefit of Smith's recedence from the "prospectively only" language in Ree v. State, 565 So.2d 1329 (Fla. 1990).
While I can understand Brown's desire to obtain relief similar to those whose cases were still pending when Smith was decided, there is a point at which the doctrine of finality must prevail. Smith drew the line with its distinction between collateral and "pipeline" cases. This Court, several years ago, explained the necessity of such a distinction:
To allow non-constitutional claims as bases for post-conviction relief is to permit a dual system of trial and appeal, the first being tentative and non-conclusive... . We reject, therefore, in the context of an alleged change of law, the use of post-conviction relief proceedings to correct individual miscarriages of justice or to permit roving judicial error corrections, in the absence of fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding.
*86 Witt v. State, 387 So.2d 922, 928-29 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980).
I respectfully dissent.
WELLS, J., concurs.